1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ARNOLD & PORTER KAYE SCHOLER LLP
SHARON D. MAYO (SBN 150469)
sharon.mayo@arnoldporter.com
Three Embarcadero Center, 10th Floor
San Francisco, CA  94111
Telephone:     415.471.3100
Facsimile:     415.471.3400

GREENSFELDER, HEMKER & GALE, P.C.
David J. Simmons (Mo. Bar No. 53801) (*pro hac vice pending*)
Ronnie L. White (Mo. Bar No. 67165) (*pro hac vice pending*)
10 South Broadway, Ste. 2000
St. Louis, MO 63102
Telephone:     (314) 241-9090
Facsimile:     (314) 345-5465
ds@greensfelder.com
rwhite@greensfelder.com

Attorneys for Plaintiff
BP Products North America Inc.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BP PRODUCTS NORTH AMERICA INC., a Maryland corporation and successor-in-interest to BP WEST COAST PRODUCTS LLC,<br><br>Plaintiff,<br><br>v.<br><br>GRAND PETROLEUM, INC., a California Corporation, AMIN SALKHI, an individual, BANAFSHEH S. SALKHI, an individual, ALI SALKHI, an individual, SOURI SALKHI, an individual, and AJANG SALKHI, an individual.<br><br>Defendants. | Case No.: _____<br><br>**BP'S VERIFIED COMPLAINT FOR:**<br><br>**I.   BREACH OF CONTRACT – VIOLATIONS OF DEED RESTRICTIONS;**<br><br>**II.  BREACH OF CONTRACT – FAILURE TO REMOVE TRADEMARKS;**<br><br>**III. BREACH OF CONTRACT – FAILURE TO PAY AMOUNTS DUE;**<br><br>**IV.  TRADEMARK INFRINGEMENT (Lanham Act);**<br><br>**V.   TRADEMARK INFRINGEMENT (Common Law);**<br><br>**VI.  FALSE AND DECEPTIVE ADVERTISING (Lanham Act);**<br><br>**VII. FALSE DESIGNATION OF ORIGIN (Lanham Act);**<br><br>**VIII. BREACH OF CONTRACT – PERSONAL GUARANTEES; and**<br><br>**IX.  PERMANENT INJUNCTIVE RELIEF.** |

Plaintiff BP PRODUCTS NORTH AMERICA INC. ("BP"), successor in interest to BP West Coast Products LLC, hereby alleges as follows:

**PARTIES**

1.     Plaintiff BP PRODUCTS NORTH AMERICA INC. is a Maryland corporation with its principal place of business in Naperville, Illinois.  Plaintiff is the successor-in-interest to BP West Coast Products LLC, the limited liability company who entered into all of the agreements at issue herein.  BP West Coast Products LLC was, at all relevant times herein, a Delaware limited liability company with its principal place of business in Washington state.

2.     Defendant Grand Petroleum, Inc. is a California corporation with its principal place of business in Concord, California.

3.     Plaintiff is informed and believes that Defendant Amin Salkhi is, and at all times mentioned herein was, a resident of Contra Costa County, California.

4.     Plaintiff is informed and believes that Defendant Banafsheh S. Salkhi is, and at all times mentioned herein was, a resident of Contra Costa County, California.

5.     Plaintiff is informed and believes that Defendant Ali Salkhi is, and at all times mentioned herein was, a resident of Marin County, California.

6.     Plaintiff is informed and believes that Defendant Souri Salkhi is, and at all times mentioned herein was, a resident of Marin County, California.

7.     Plaintiff is informed and believes that Defendant Ajang Salkhi is, and at all times mentioned herein was, a resident of Marin County, California.

**JURISDICTION**

8.     The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(l) as this matter is between citizens of different states and the amount in controversy exceeds the value of $75,000.

9.     This Court also has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 as Plaintiff has alleged causes of action that arise under the laws of the United States.

10.     Venue is proper in the United States District Court for the Northern District of California because the claims herein arise out of acts and/or omissions occurring in the Counties of

Alameda and Santa Clara and relate to real property located in the Counties of Alameda and Santa Clara.

## INTRADISTRICT ASSIGNMENT

11.     Pursuant to Local Rule 3-2(c) and General Order No. 44, venue for this case is proper in either the Oakland or San Francisco Divisions of the Northern District of California because the claims arise in the Counties of Alameda and Contra Costa..

## FACTUAL ALLEGATIONS

**A.     Defendant Amin Salkhi.**

12.     Defendant Amin Salkhi ("Salkhi") through his company, Grand Petroleum, Inc. ("Grand Petroleum"), operated two ARCO-branded gasoline stations containing *ampm* convenience stores located in Los Altos, California ("Los Altos Station") and Oakland, California ("Oakland Station") until January 15, 2020.

13.     Salkhi began working in the petroleum marketing industry with his father in 1983 and  is an experienced, sophisticated gasoline and convenience store owner and operator who owns and/or operates several gasoline stations in the State of California.

14.     After Salkhi graduated from the Georgia Institute of Technology with a Bachelor of Electrical Engineering Degree in 1993, he held several engineering jobs, but would also assist his father with gasoline stations that his father owned and/or operated.

15.     Salkhi became involved in the day-to-day operations of his family's gasoline stations in or around September 2003.

16.     Salkhi owns 100% of Grand Petroleum, Inc.  Salkhi, through Grand Petroleum, owns and/or operates the following stations in the state of California:  (1) a Chevron station, located at 3210 Buskirk Ave., Pleasant Hill, CA 94523; (2) a Chevron station, located at 15838 Paul Negra Road, Firebaugh, CA 96322; (3) an independently branded station, located at 604 Contra Costa Blvd, Concord, CA 94523; (4) an independently branded station, located at 25757 Soto Road, Hayward, CA 94544; and (5) a Valero Station, located at 138 Jackson St., Hayward, CA 94544. Amin Salkhi is also the C.F.O. of Grand Strawberry Petroleum, which operates a Valero-branded station.

1

**B.      The Properties and Use Restrictions.**

2

17.      On or about August 6, 2009, Defendants Amin Salkhi and Banafsheh S. Salkhi ("Los

3

Altos Owners") purchased real estate located at 988 N. San Antonio Road, Los Altos, CA 94022

4

("Los Altos Property") from BPWCP for $925,000.00.

5

18.      In connection with purchasing the Los Altos Property, the Los Altos Owners

6

executed a Grant Deed that was recorded on August 6, 2009 with the Santa Clara County Recorder

7

as Document Number 20389198.  A true and correct copy of the Los Altos Grant Deed is attached

8

hereto as **Exhibit A**.[1]

9

19.      On or about October 8, 2009, Defendants Ali Salkhi and Souri Salkhi, Amin Salkhi

10

and Banafsheh Salkhi, and Ajang Salkhi ("Oakland Owners") purchased real estate located at 9800

11

International Boulevard, Oakland, CA 94603 ("Oakland Property") from BPWCP for $275,000.00.

12

20.      In connection with purchasing the Oakland Property, the Oakland Owners executed a

13

Grant Deed that was recorded on October 8, 2009 with the Official Records of Alameda County as

14

Instrument Number 2009318704.  A true and correct copy of the Oakland Grant Deed is attached

15

hereto as **Exhibit B**.

16

21.      The Grant Deeds conveying property to the Los Altos and Oakland owners each

17

contained use restrictions that prohibit the owners from using the Los Altos or Oakland Properties

18

as: (i) a convenience food store other than a convenience food store operated under a franchise or

19

other agreement with BP, (ii) a fast food takeout restaurant, or (iii) facility selling motor fuel other

20

than a facility selling motor fuel under a supply or other agreement with BP (the "Use

21

Restrictions").  *See* **Exhibit A at p. 12 and Exhibit B at p. 2**.

22

22.      The Grant Deeds provide that the Use Restrictions survive the early termination of

23

any franchise agreements with BP and remain in effect for the full term of the franchise agreements.

24

*Id.*

25

_____

26

[1] The documents attached hereto as Exhibits A, B, C, D, E, F, G, H, I, N, and O are kept by BP in the
regular course of business, and it was the regular course of business of BP for an employee or

27

representative of BP with knowledge of the act, event, condition, opinion or matters recorded to make
the record or to transmit information thereof to be included in such record; and the record was made

28

at or near the time of the act, event, condition, opinion or matters.  The records attached hereto are
the original or exact duplicates of the original.

23.     The terms of the franchise agreements for the Los Altos Station run through June 29, 2029, and the terms of the franchise agreements for the Oakland Station run through October 31, 2029.  The Use Restrictions contained in the Grant Deeds for the respective properties are in full force and effect until those dates.

**C.      The Franchise Agreements.**

24.     On or about June 29, 2009, BPWCP entered into an *ampm* Mini-Market Agreement and Contract Dealer Gasoline Agreement with Grand Petroleum, whereby Grand Petroleum agreed to operate a retail facility selling "ARCO" branded gasoline to end users at the Los Altos Property. True and correct copies of the *ampm* Mini-Market Agreement and Contract Dealer Gasoline Agreement for the Los Altos Property are attached hereto as **Exhibits C and D** respectively.

25.     On or about October 6, 2009, BPWCP entered into an *ampm* Mini-Market Agreement and Contract Dealer Gasoline Agreement with Grand Petroleum whereby Grand Petroleum agreed to operate a retail facility selling "ARCO" branded gasoline to end users at the Oakland Property.  True and correct copies of the *ampm* Mini-Market Agreement and Contract Dealer Gasoline Agreement for the Oakland Property are attached hereto as **Exhibits E and F** respectively.

26.     Pursuant to the Los Altos Franchise Agreements and Oakland Franchise Agreements, Grand Petroleum agreed to operate the retail facility stations and sell "ARCO" branded fuel for a term of twenty (20) years through and including June 29, 2029 at the Los Altos Property and October 31, 2029 at the Oakland Property.

27.     At all relevant times alleged herein, the operator of the gasoline stations and *ampm* convenience stores located on the Los Altos Property and Oakland Property was Grand Petroleum, Inc.

**D.      Salkhi's Dissatisfaction With BP**

28.     For the majority of the time they operated as a franchisee, Grand Petroleum and Salkhi engaged in a number of actions and/or inactions aimed at showcasing their displeasure with BP.

29.     In October 2012, Grand Petroleum became the lead plaintiff in the lawsuit *Grand Petroleum, Inc. v. BPWCP*, Case No. BC494169 filed in California Superior Court for the County of Los Angeles ("Grand Petroleum Lawsuit") alleging, in part, that BP's wholesale prices for gasoline were illegal and set in bad faith.

30.     As of one the lead plaintiffs in the Grand Petroleum Lawsuit, Salkhi was outspoken in his criticism of BP.  Indeed, he often sent chastising and accusatory emails to BP personnel regarding what he perceived as misconduct by BP.

31.      In August 2015, following a 6-week trial, a Los Angeles county jury held that BP's wholesale prices and pricing methodology were legal under California law.  The jury verdict was subsequently upheld by the California Court of Appeals and plaintiffs' petition for review was denied by the California Supreme Court.

32.     In addition to filing lawsuits against BPWCP, Grand Petroleum also repeatedly failed to comply with its franchise obligations during the majority of time it was a franchisee. Indeed, instead of operating their franchise locations consistently with other franchisees, Grand Petroleum and Salkhi engaged in a repeated pattern of delay and resistance until they were under the threat of termination at which time Grand Petroleum would begrudgingly fulfill its contractual obligations.

## 1.     Site Systems Requirements.

33.     On June 29, 2015, BP informed franchisees, including Grand Petroleum and Salkhi, of pending equipment changes to the Point of Sale System ("POS System") and other affiliated site systems.

34.     At that time, BP, in an attempt to encourage early franchisee adoption of the system changes, and without having any obligation to do so, offered to fund a portion of the costs related to the early adoption of the system changes.

35.     The system changes included: (1) installing a Verifone Topaz POS System; (2) installing a Commander EPS/Forecourt Controller; (3) installing an S2k Back Office System; (4) establishing and maintaining a High Availability Network ("HAN"); and (5) processing all debit, fleet, and gift cards through the BP Network.

36.     Grand Petroleum was the only franchisee to decline to participate in the early adoption of the system changes and, thus, Grand Petroleum chose not to receive any of the funds BP offered to offset the costs related to the early adoption of the system changes.

37.     On January 15, 2018, BP informed Grand Petroleum and Salkhi that the site system changes they were notified about nearly three years prior were becoming mandatory for both the Los Altos and Oakland Stations. BP gave Grand Petroleum and Salkhi until February 15, 2019 – over a year – to meet BP's site system changes that they were notified about in 2015.

38.     As of February 4, 2019, Grand Petroleum had failed to comply with the site systems requirements. Accordingly, BP sent termination letters to Grand Petroleum and Salkhi notifying them that the sites would be terminated effective on May 6, 2019 unless they were brought into compliance. Under threat of termination, Grand Petroleum finally took steps to make the site system changes, with the Oakland station becoming compliant in or around February 2019, and the Los Altos station becoming compliant in or around March 2019. BP ultimately rescinded the termination notices for both stations.

**2.     The CORE Program.**

39.     BP operates the Consumer and Operations Retail Excellence ("CORE") program to ensure consistency in operations amongst the franchise network. BPWCP provided franchisees, including Grand Petroleum, with several materials outlining the CORE image standards, including the Store Systems Manual and CORE Operations Inspection Survey.

40.     Further, BPWCP provides franchisees with materials outlining the exact questions that they will be evaluated on in connection with the CORE inspections, as well as a corresponding explanation and sample photographs depicting visually satisfactory and unsatisfactory images for questions on the survey.

41.     When BPWCP makes changes to the image standards, franchisees are provided with updated materials as well as a "Summary of Changes" highlighting any modifications to the CORE program requirements.

42.     Effective January 2017, BP informed its franchisees, including Grand Petroleum, that it required a minimum passing score of 70% for CORE inspections and established a default

escalation process under which a franchisee could be terminated for repeated failed CORE inspections.

43. Under the default escalation process, if a franchisee receives less than a 70% on a CORE inspection, they receive a "Notice of Default." After three consecutive failures, a franchisee receives a notice of default with a final opportunity to cure and is warned that another failure could lead to termination. If a franchisee fails a fourth consecutive inspection, they receive a notice of termination.

44. In the first quarter of 2017, Grand Petroleum and Salkhi received scores of 47.67% and 58.04% on their CORE Operations Inspections for their Los Altos and Oakland Stations respectively and, thus, failed those inspections. Grand Petroleum and Salkhi were sent Notice of Default letters for their failing CORE Operations Inspections.

45. In the second quarter of 2017, Grand Petroleum and Salkhi received scores of 50.09% and 45.33% on their CORE Operations Inspections for their Los Altos and Oakland Stations respectively and, thus, failed those inspections for the second time. Grand Petroleum and Salkhi were sent Notice of Default letters for their failing CORE Operations Inspections.

46. In the third quarter of 2017, Grand Petroleum and Salkhi received scores of 53.39% and 41.84% on their CORE Operations Inspections for their Los Altos and Oakland Stations respectively and, thus, failed those inspections for the third time. Grand Petroleum and Salkhi were sent Notice of Default letters for their failing CORE Operations Inspections.

47. In the October 25, 2017 Notices of Default for both the Los Altos and Oakland Stations, BPWCP informed Grand Petroleum and Salkhi that they had failed three consecutive CORE Operations Inspections, and that if they did not achieve a passing score on the next Core Operation Inspection for their stations BP would "take any and all action available to it under the Franchise Agreements, at law or in equity, including without limitation the non-renewal or termination of the Franchise Agreements."

48. Again, after BPWCP threatened termination of the franchise agreements for the Los Altos and Oakland Stations, Grand Petroleum and Salkhi finally cured their defaults for those stations.

49.     In the fourth quarter of 2017, Grand Petroleum and Salkhi achieved passing CORE Operations Inspection scores.

### 3. The Luminate Program.

50.     In 2013, BP launched the Luminate Program, which was a program to upgrade existing ARCO trademarks and graphics by replacing them with the new Luminate Image.

51.     When the Luminate Program was offered to franchisees, BP offered to pay costs associated with the implementation of the Luminate Program.

52.     Grand Petroleum and Salkhi did not participate in this program when it was rolled out in 2013.  The vast majority of BPWCP's franchisees, however, did elect to participate in the Luminate Program.

53.     On or about July 18, 2018, BPWCP informed Grand Petroleum and Salkhi that they were required to update the trademarks and graphics at the Los Altos and Oakland Stations to the new Luminate Image on or before March 31, 2019.

54.     In January 2019, BPWCP reminded Grand Petroleum and Salkhi that BPWCP was decommissioning all of its prior trademarks and graphics and that Grand Petroleum and Salkhi were required to replace the prior trademarks and graphics with the Luminate Image trademarks and graphics.

55.     On June 17, 2019, BPWCP provided Grand Petroleum and Salkhi with one final opportunity to comply with the Luminate Program and replace the prior trademarks and graphics with the Luminate Image trademarks and graphics.

56.     Despite repeated opportunities to comply, Grand Petroleum and Salkhi never replaced the prior trademarks and graphics with the Luminate Image trademarks and graphics and, thus, never complied with the Luminate Program.

### 4. The MOJO Program.

57.     In March 2017, BP launched the "MOJO A Program," a consumer offer consisting of a new fresh food program, new hot beverage program, and new store graphics.

58.     At that time, BP offered to pay the franchisee costs of the MOJO A Program in exchange for extending the franchisees' current franchise agreements.  The program was initially voluntary.

59.     After roughly 95% of BP's franchisees participated in the MOJO A Program, BP determined that MOJO A Program would be mandatory as the consumer offer in the ampm stores. Grand Petroleum and Salkhi did not voluntarily participate in the MOJO A Program.

60.     In January 2018, BPWCP informed Grand Petroleum and Salkhi that on December 31, 2018, BPWCP would require that all store marks, graphics, coffee equipment, deli case equipment and related programming, along with all associated coffee and deli program graphics, would be required to be upgraded to meet the requirements outlined in the 2019 Store Systems Manual and the MOJO A Program.

61.     On February 19 and 20, 2019, BPWCP issued Grand Petroleum and Salkhi a "Notice of Default and Opportunity to Cure" for both the Los Altos and Oakland Stations based upon their failure to comply with the MOJO A Program for either station.  In those letters, Grand Petroleum and Salkhi were given one final opportunity - until July 31, 2019 - to bring the Los Altos and Oakland Stations into compliance with the MOJO A Program.

**E.      BP's Termination of the Franchise Agreements.**

62.     On October 3, 2019, BPWCP issued Notices of Termination and Demands for Payment to Grand Petroleum and Salkhi for the Los Altos and Oakland Stations.  True and correct copies of the October 3, 2019 Notices of Termination and Demands for Payment for the Los Altos and Oakland franchise agreements are attached hereto as **Exhibits G and H** respectively.

63.     As stated in the October 3, 2019 letters, the termination of the Contract Dealer Gasoline Agreements and *ampm* Mini-Market Agreements for both the Los Altos and Oakland Stations would become effective on January 8, 2020 unless Grand Petroleum and Salkhi cured their non-compliance with both the Luminate Program and MOJO A Program by December 17, 2019. Grand Petroleum and Salkhi failed to do so.

64.     On December 19, 2019, two days after the deadline for compliance, Salkhi sent an e-mail to BPWCP showing that he ordered payment to be made from his bank on December 26, 2019,

but for only certain signage and graphics associated with the Luminate Program.  However, he indicated that the signage and graphics were on order and would not be installed until 30 days after receipt.  Also, Mr. Salkhi sent quotes he received dated December 17, 2019 and December 18, 2019 for the required work to be done at the Oakland and Los Altos facilities.

65.     BP unilaterally extended the termination date from January 8, 2020 until January 15, 2020.

66.     On January 9, 2020, Salkhi sent a letter to BPWCP admitting that he had not complied with the Luminate Program, but requesting additional time to comply.

67.     On January 10, 2020, BP denied Salkhi's request for more time.

68.     On January 15, 2020, the Contract Dealer Gasoline Agreements and *ampm* Mini-Market Agreements for both the Los Altos and Oakland Stations were terminated.

**F.     Salkhi's Challenge To The Land Use and Operating Restrictions**

69.     On May 8, 2018, Salkhi and the other individual Defendants in this case filed a lawsuit in the Northern District of California styled *Amin Salkhi et. al. v. BP West Coast Products LLC*, Case No. 3:18-cv-02676-YGR (the "Lawsuit") seeking to declare the land use and operating restrictions in the grant deeds on the Los Altos and Oakland Properties illegal and void under Cal. Bus. Prof. Code Section 16600.

70.     On September 16, 2019, the Honorable Yvonne Gonzalez Rogers issued an order finding that Section 16600 was not applicable to restrictions on land use.  On September 26, 2019, Judge Rogers entered a Judgment holding that the Use Restrictions contained in Defendants' Grant Deeds are valid and enforceable restraints on the use of the Los Altos and Oakland Properties.  A true and correct copy of the Order entered in the Lawsuit attached hereto as **Exhibit I**.

71.     On October 14, 2019, Defendants filed an appeal from the Order and Judgment entered by the Honorable Yvonne Gonzalez Rogers in the Ninth Circuit.  Defendants filed their opening appellate brief on January 21, 2020, six days after BP terminated the franchise agreements, and during the time Defendants began violating the Use Restrictions and the Order attached hereto as **Exhibit I**.

G.      **Grand Petroleum and Salkhi's Conduct Following Termination.**

72.     Since their franchises were terminated on January 15, 2020, Defendants have continued to sell gasoline and operate the convenience stores located on the Los Altos and Oakland Properties.

1.      **The Oakland Station Continues Selling Gasoline and Convenience Store Items After Termination.**

73.     On January 24, 2020, Gary Ramponi, one of BP's Franchise Business Consultants, purchased gasoline and a convenience store item at the Oakland Station.  *See* Declaration of Gary Ramponi ("Ramponi Decl.") attached hereto as **Exhibit J**.

74.     Based on the receipt attached to the Ramponi Decl. as Exhibit A, Defendants are selling gasoline and convenience store items from the Oakland Station under the name "Grand Gas."

75.     In addition, Mr. Ramponi took several pictures of the exterior and interior of the convenience store at the Oakland Station.  True and correct copies of those pictures are attached to the Ramponi Decl. as Exhibit B.

76.     The pictures taken by Mr. Ramponi show that Defendants are continuing to use signs in the convenience store located on the Oakland Property that state "High Voltage" and "Straight Chillin'", which are two of BP's trademarks.  True and accurate copies of the Trademark Registrations for both "High Voltage" and "Straight Chillin'" are attached hereto as **Exhibit K and L** respectively.  Defendants do not have permission to use these trademarks.

2.      **The Los Altos Station Continues Selling Gasoline and Convenience Store Items After Termination.**

77.     On January 24, 2020, Joe Battistelli, one of BP's Franchise Business Consultants, purchased gasoline and a convenience store item at the Los Altos Station.  *See* Declaration of Joe Battistelli ("Battistelli Decl.") attached hereto as **Exhibit M**.

78.     In addition, Mr. Battistelli took several pictures of the exterior and interior of the convenience store at the Los Altos Station.  True and correct copies of those pictures are attached to the Battistelli Decl. as Exhibit B.

79.     The pictures taken by Mr. Battistelli show that Defendants are continuing to use signs in the convenience store located on the Los Altos Property that state "High Voltage" and "Straight Chillin'", which are two of BP's trademarks.  *See* **Exhibits K and L**.  Defendants do not have permission to use the trademarks.

## COUNT I

## BREACH OF CONTRACT – VIOLATION OF DEED RESTRICTIONS

(Against All Defendants)

80.     BP hereby incorporates all of the allegations contained in paragraphs 1-79 as if fully set forth herein.

81.     Pursuant to the Use Restrictions in the Grant Deeds for both the Los Altos and Oakland Properties, Defendants are prohibited from using the Los Altos or Oakland Properties as: (i) a convenience food store other than a convenience food store operated under a franchise or other agreement with BP, (ii) a fast food takeout restaurant, or (iii) facility selling motor fuel other than a facility selling motor fuel under a supply or other agreement with BP.

82.     On September 26, 2019, Judge Yvonne Gonzalez Rogers in the Northern District of California entered a Judgment holding that the Use Restrictions contained in the Grant Deeds are valid and enforceable restraints on the use of the Los Altos and Oakland Properties.  *See* **Exhibit M**.

83.     Grand Petroleum and Salkhi's *ampm* Mini-Market Agreements and Contract Dealer Gasoline Agreements for both the Los Altos and Oakland Stations were terminated on January 15, 2020.

84.     Defendants no longer have any agreements with BP to operate a convenience food store or to sell motor fuel at the Los Altos or Oakland Properties.

85.     Since January 15, 2020, Defendants have been operating a convenience food store and selling motor fuel at both the Los Altos and Oakland Properties.

86.     Defendants have breached and continue to breach the Use Restrictions contained in the Grant Deeds for both the Los Altos and Oakland Properties.

87.     BP has been harmed and will continue to be harmed by Defendants blatant disregard for the Use Restrictions and the Northern District of California's Judgment holding that the Use Restrictions were valid and enforceable under California law.

**COUNT II**

**BREACH OF CONTRACT – FAILURE TO REMOVE TRADEMARKS AND RETURN INFORMATION**

(Against Defendants Grand Petroleum and Amin Salkhi)

88.     BP hereby incorporates all of the allegations contained in paragraphs 1-79 as if fully set forth herein.

89.     Pursuant to the *ampm* Mini-Market Agreements for both the Los Altos and Oakland Stations, upon termination Defendant Grand Petroleum was required to "[c]ease using all of the Marks and any of the other indicia of BP pertaining to the *ampm* System."  *See* **Exhibits C and E** at paragraph 19.01(a).

90.     In addition, upon termination of the *ampm* Mini-Market Agreements for both the Los Altos and Oakland Stations, Defendant Grand Petroleum was required to:

> Return to BP all copies of BP's Proprietary Software, and all copies of the Manual and all other documents, instructions, manuals, display items, materials and writings furnished by BP pertaining to the *ampm* Franchise or bearing the Marks in connection with the *ampm* Mini Market.

*Id.* at paragraph 19.01(b).

91.     Grand Petroleum is continuing to use the Marks "High Voltage" and "Straight Chillin'" (the "Marks at Issue") in connection with the continued operation of their convenience stores located on the Los Altos and Oakland Properties.

92.     Grand Petroleum has breached and continues to breach paragraphs 19.01(a) and 19.01(b) of the *ampm* Mini-Market Agreements for the Los Altos and Oakland Stations.

93.     BP has been harmed, and will continue to be harmed, by Grand Petroleum's breach and continued breach of paragraphs 19.01(a) and 19.01(b) of the *ampm* Mini-Market Agreement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT III

## BREACH OF CONTRACT – FAILURE TO PAY AMOUNTS DUE TO BP

(Against Defendants Grand Petroleum and Amin Salkhi)

94.     BP hereby incorporates all of the allegations contained in paragraphs 1-79 as if fully set forth herein.

95.     Pursuant to the *ampm* Mini-Market Agreements for both the Los Altos and Oakland Stations, upon termination of the *ampm* Mini-Market Agreements, Grand Petroleum shall pay BP:

> (i) the total Minimum Monthly Royalty which would have been payable under this Agreement from the date of termination of this Agreement through the end of the Term; or (ii) for each month from the date of termination of this Agreement through the end of the Term, the actual average Monthly Royalty paid for any months that the Mini Market was operational prior to termination of this Agreement, but not less than the Minimum Monthly Royalty during each such month.

*See* Exhibits C and E at paragraph 19.01(d).

96.     At the time Defendant Grand Petroleum's *ampm* Mini-Market Agreements were terminated, the following approximate amounts were owed to BP as liquidated damages for each location:  (1) Los Altos - $119,000; (2) Oakland - $121,000.

97.     Defendants Grand Petroleum and Salkhi have failed to pay BP for the liquidated damages owed pursuant to the *ampm* Mini-Market Agreements for both the Los Altos and Oakland Stations.

98.     As a result of Defendants Grand Petroleum's and Salkhi's failure to pay BP the amounts owed pursuant to the *ampm* Mini-Market Agreement, BP has been damaged.

# COUNT IV

## TRADEMARK INFRINGEMENT

### (Lanham Act § 32)

(Against all Defendants)

99.     BP hereby incorporates all of the allegations contained in paragraphs 1-79 as if fully set forth herein.

100.     BP's trademark registrations for both "High Voltage" and "Straight Chillin'," attached hereto as **Exhibits K and L**, are prima facie evidence of their validity and provide constructive notice to others of BP's claim of ownership.  15 U.S.C. § 1115, *et seq*.  Further, Defendants had actual knowledge of BP's claims of ownership.

101.     Defendants have no rights to use any of BP's Marks, including the Marks "High Voltage" or "Straight Chillin'" after the termination of the *ampm* Mini-Market Agreements and Contract Dealer Gasoline Agreements for the Los Altos and Oakland Stations.

102.     Defendants continued use of the Marks at Issue, constitutes a misappropriation of BP's trademarks.

103.     Defendants have used and are continuing to use the Marks at Issue in an unauthorized manner to promote Defendants' businesses operating on the Los Altos and Oakland Properties.

104.     Defendants' improper use of the Marks at Issue has caused and may continue to cause immediate and irreparable harm to BP due to its loss of control over the quality of goods and services advertised, offered, and provided under its Marks.  The loss of BP's right to control the use of the Marks at Issue and the reputation of the services and goods provided in connection therewith is real and substantial.

105.     Defendants' use of the Marks at Issue deceives and causes confusion, and the continued use of the same is likely to continue to cause confusion as to the source of the products and services offered by Defendants.

106.     Defendants' unauthorized use and any continued use of the Marks at Issue has benefitted Defendants as they have profited from their improper use.

107.     BP has incurred damages, and may continue to suffer damages, from Defendants' unauthorized use of the Marks at Issue.

108.     Defendants have knowingly and willfully infringed and may be continuing to infringe upon BP's Marks.

109.     Defendants' improper use of the Marks at Issue constitute and may continue to constitute trademark and service mark infringement under the Lanham Act, 15 U.S.C. § 1114(1).

110.     Defendants' infringing conduct was and may continue to be willful infringement under 15 U.S.C. § 1114(1) and therefore constitutes an exceptional case under 15 U.S.C. § 1117(a).

## COUNT V

## TRADEMARK INFRINGMENT (COMMON LAW)

(Against all Defendants)

111.     BP hereby incorporates all of the allegations contained in paragraphs 1-79 as if fully set forth herein.

112.     BP owns the Marks at Issue and the substantial goodwill associated therewith.

113.     Defendants do not have permission to use the Marks at Issue because the agreements under which they were allowed to use the Marks at Issue have been terminated.

114.     Defendants have used and may be continuing to use the Marks at Issue in an unauthorized manner to promote Defendants businesses that are operating on the Los Altos and Oakland Properties.

115.     Defendants have no rights to use the Marks at Issue in any manner.

116.     Defendants' use of the Marks at Issue causes confusion, and is likely to continue to cause confusion as to the source of the products and services offered by Defendants.

117.     Defendants have used and may be continuing to use the Marks at Issue in a manner to create a false association between the companies as to the source of products and services.

118.     Defendants' improper use of the Marks at Issue caused and may continue to cause immediate and irreparable harm to BP due to its loss of control over the quality of goods and services advertised, offered, and provided under the Marks at Issue.  The loss of BP's right to

control the use of the Marks at Issue and the reputation of the services and goods provided in connection therewith is real and substantial.

119.    Defendants knowingly and willfully infringed upon BP's trademarks, and are continuing to do so.

120.    Defendants' improper use of the Marks at Issue constitutes trademark and service mark infringement under common law.

<u>COUNT VI</u>

<u>FALSE AND DECEPTIVE ADVERTISING</u>

**Lanham Act § 43 (a)(1)(b)**

(Against all Defendants)

121.    BP hereby incorporates all of the allegations contained in paragraphs 1-79 as if fully set forth herein.

122.    BP owns the Marks at Issue and the substantial goodwill associated therewith.

123.    Defendants do not have permission to use the Marks at Issue because the agreements under which they were allowed to use the Marks at Issue have been terminated.

124.    Defendants have used and are continuing to use the Marks at Issue in an unauthorized manner.

125.    Defendants have no rights to use the Marks at Issue in any manner.

126.    Defendants' use of the Marks at Issue does deceive and cause confusion, and is likely to continue to cause confusion, as to the source of the products and services offered by Defendants.

127.    Defendants have made and may be continuing to make a false statement of fact about Defendants' business and products by associating them with the Marks at Issue.

128.    Defendants' deception is material and likely will influence consumer decisions when purchasing Defendants' products.

129.    Defendants have caused their false statements to be placed into interstate commerce and may be continuing to do so.  Defendants are attempting to capitalize on the goodwill BP has created in the Marks at Issue.

130.     Defendants' improper use of the Marks at Issue has caused and may continue to cause immediate and irreparable harm to BP due to its loss of control over the quality of goods and services advertised, offered, and provided under the Marks at Issue.  The loss of BP's right to control the use of the Marks at Issue and the reputation of the services and goods provided in connection therewith is real and substantial.

131.     Defendants have knowingly and willfully infringed and may be continuing to knowingly and willfully infringe upon the Marks at Issue.

132.     Defendants intend to profit by using the Marks at Issue to divert customers from BP to Defendants' business so that the customers purchase services from Defendants and not BP.

133.     Defendants' use of the Marks at Issue violates the Lanham Act.

## COUNT VII

## FALSE DESIGNATION OF ORIGIN

### (Lanham Act § 43 (a)(1)(a))

(Against all Defendants)

134.     BP hereby incorporates all of the allegations contained in paragraphs 1-79 as if fully set forth herein.

135.     BP owns the Marks at Issue and the substantial goodwill associated therewith.

136.     Defendants do not have permission to use the Marks at Issue because the agreements under which they were allowed to use the Marks at Issue have been terminated.

137.     Defendants have used and are continuing to use the Marks at Issue.

138.     Defendants have no rights to use the Marks at Issue in any manner.

139.     Defendants' use of the Marks at Issue does deceive and cause confusion, and is likely to continue to cause confusion, as to the source of the products and services offered by Defendants.

140.     Defendants have made and may be continuing to make a false statement of fact about Defendants' business and products by associating them with the Marks at Issue.

141.     Defendants' deception is material and likely will influence consumer decisions when purchasing Defendants' business or products.

142.     Defendants have caused their false statements to be placed into interstate commerce and may be continuing to do so.  Defendants are attempting to capitalize on the goodwill BP has created in the Marks at Issue.

143.     Defendants' improper use of the Marks at Issue has caused and may continue to cause immediate and irreparable harm to BP due to its loss of control over the quality of goods and services advertised, offered, and provided under the Marks at Issue.  The loss of BP's right to control the use of the Marks at Issue and the reputation of the services and goods provided in connection therewith is real and substantial.

144.     Defendants have knowingly and willfully infringed and may be continuing to knowingly and willfully infringe upon the Marks at Issue.

145.     Defendants intend to profit by using the Marks at Issue to divert customers from BP to Defendants' business so that the customers purchase services from Defendants and not BP.

146.     Defendants' use of the Marks at Issue violates the Lanham Act.

<u>**COUNT VIII**</u>

<u>**BREACH OF CONTRACT – PERSONAL GUARANTEES**</u>

(Against Defendant Amin Salkhi)

147.     BP hereby incorporates all of the allegations contained in paragraphs 1-147 as if fully set forth herein.

148.     In connection with all of Grand Petroleum's agreements with BP for both the Los Altos and Oakland Stations and Properties, Defendant Salkhi personally guaranteed to BP that he would:

> irrevocably, fully and unconditionally [guaranty] to BP the full and prompt performance and payment when due, whether by acceleration or otherwise, of any and all of the obligations of Debtor owed to BP, including but not limited to, all obligations, responsibilities, financial requirements, indebtedness, liabilities, debit balances, letter of credit or purchase guaranty reimbursement obligations, covenants, duties and all other obligations of whatever kind or nature at any time or from time

to time owing by Debtor to BP, or to any of BP;s affiliates, whether fixed or contingent, known or unknown, liquidated or unliquidated, present or future, no matter how or when arising under the Franchise Agreement, or any other present or future related agreement, and including without limitation all obligations owed by Debtor to third parties which are or may be assigned to BP arising from the Franchise Agreement [].

True and correct copies of the Unconditional Guarantees for both the Oakland and Los Altos locations are attached hereto as **Exhibits N and O** respectively.

149.     Defendant Salkhi is personally liable and responsible for the breaches and claims set forth in this Complaint.

150.     Defendant Salkhi has failed to abide by all of the covenants, representations, and agreements set forth in the Grant Deeds for the Los Altos and Oakland Properties, the *ampm* Mini-Market Agreements for the Los Altos and Oakland Stations, and the Contract Dealer Gasoline Agreements for the Los Altos or Oakland Stations, or the Unconditional Guarantees.

151.     Defendant Salkhi's breach of his personal guaranties to BP has caused, and will continue to cause, harm to BP.

## COUNT IX

## PERMANENT INJUNCTIVE RELIEF

(Against All Defendants)

152.     BP hereby incorporates all of the allegations contained in paragraphs 1-148 as if fully set forth herein.

153.     By virtue of the foregoing, BP has demonstrated a substantial likelihood that it will prevail on the merits of its claims in Counts I, II, IV, V, VI, VII, and VIII of this Complaint and that a balancing of the equities favors the issuance of an injunction against Defendants.

154.     Unless Defendants are enjoined, BP will be immediately and irreparably harmed by Defendants' continued operation of the convenience stores and gasoline stations located on the Los Altos and Oakland Properties, and the use of the Marks at Issue and use of its goodwill.

155.   BP has no adequate remedy at law.

156.   BP has been and continues to be irreparably harmed by Defendants' breaches of the Grant Deeds, *ampm* Mini-Market Agreements, and violations of state and federal trademark laws.

157.   Unless the requested injunctive relief is issued, BP will continue to suffer irreparable harm due to Defendants' violations set forth herein.

158.   If injunctive relief is not granted, the harm to BP will outweigh any harm to Defendants.

159.   Public policy will be served by the entry of the requested injunctive relief as it will promote the public policy of enforcing contractual rights and obligations, enforcing judgments of this Court, and avoiding confusion in the marketplace.

160.   BP submits that a bond of no more than $10,000 is necessary to support any requested temporary or preliminary injunction because Defendants will merely be required to honor the terms of their agreements and state and federal law.

## PRAYER FOR RELIEF

WHEREFORE, BP respectfully requests a judgment in its favor and against Defendants as follows:

1.   A permanent injunction prohibiting Defendants from operating (i) a convenience food store other than a convenience food store operated under a franchise or other agreement with BP, (ii) a fast food takeout restaurant, or (iii) facility selling motor fuel other than a facility selling motor fuel under a supply or other agreement with BP, on the Los Altos Property until after June 29, 2029;

2.   A permanent injunction prohibiting Defendants from operating (i) a convenience food store other than a convenience food store operated under a franchise or other agreement with BP, (ii) a fast food takeout restaurant, or (iii) facility selling motor fuel other than a facility selling motor fuel under a supply or other agreement with BP, on the Oakland Property until after October 23, 2029;

3.   A permanent injunction barring Defendants from directly or indirectly using BP's Marks, including the Marks at Issue;

4.      A permanent injunction requiring that Defendants return the following to BP: All copies of BP's Proprietary Software, and all copies of the Store Systems Manual and all other documents, instructions, manuals, display items, materials and writings furnished by BP pertaining to the *ampm* Franchise or bearing the Marks in connection with the *ampm* Mini Market.

5.      An award of compensatory, liquidated, and punitive damages, as well as pre- and post-judgment interest;

6.      An award of all of BP's costs, expenses, and attorneys' fees; and

7.      All such other relief as the Court deems just and appropriate.


DATED: February 6, 2020            Respectfully submitted:


ARNOLD & PORTER KAYE SCHOLER LLP
SHARON D. MAYO (SBN 150469)
sharon.mayo@arnoldporter.com
Three Embarcadero Center, 10th Floor
San Francisco, CA  94111
Telephone:      415.471.3100
Facsimile:      415.471.3400

GREENSFELDER, HEMKER & GALE, P.C.
David J. Simmons (Mo. Bar No. 53801) (*pro hac vice pending*)
Ronnie L. White (Mo. Bar No. 67165) (*pro hac vice pending*)
10 South Broadway, Ste. 2000
St. Louis, MO 63102
Telephone:      (314) 241-9090
Facsimile:      (314) 345-5465
ds@greensfelder.com
rwhite@greensfelder.com


By:   __/s/ Sharon D. Mayo_____

Attorneys for Plaintiff BP Products North America Inc.

1

**VERIFICATION**

2   STATE OF CALIFORNIA        )
                               ) ss.
3   COUNTY OF _____ )

4       I, Patrick Lemons, of lawful age, and after being first duly sworn on oath, state that I am a

5   Regional Sales Manager with BP Products North America Inc., I have read the above and foregoing

6   Verified Petition and know the contents thereof, and that such allegations are true according to the

7

8   best of my knowledge and belief.

9

10
                                        _____
11                                      Name

12
                                        _____
13                                      Title

14

15
        Subscribed and sworn to before me this _____ day of February, 2020.
16

17

18

19

20  1836824

21

22

23

24

25

26

27

28

# CALIFORNIA JURAT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                        }

COUNTY OF _Orange_____ }

Subscribed and sworn to (or affirmed) before me on this __4th__ day of __February__, __2020__
                                                    Date              Month              Year

by _____Patrick   Lemons_____

_____
                        *Name of Signers*

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature: _____
              *Signature of Notary Public*

CUONG BAO NGUYEN
Notary Public - California
Orange County
Commission # 2237868
My Comm. Expires Apr 13, 2022

*Seal*
*Place Notary Seal Above*

-------------------------------------------- **OPTIONAL** --------------------------------------------

*Though this section is optional, completing this information can deter alteration of the document or fraudulent attachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document:_____

Document Date:_____

Number of Pages:_____

Signer(s) Other Than Named Above:_____