**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **BP PRODUCTS NORTH AMERICA, INC.,**<br><br>Plaintiff,<br><br>vs.<br><br>**GRAND PETROLEUM,** *et al.*<br><br>Defendants. | Case No.: 20-CV-901 YGR<br><br>**ORDER DENYING PRELIMINARY INJUNCTION; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COUNTERCLAIM; AND ADVANCING CASE MANAGEMENT CONFERENCE**<br><br>**DKT. NOS. 20, 39** |

Presently pending before the Court are the motions of plaintiff BP Products North America, Inc. ("BP") for preliminary injunctive relief (Dkt. No. 20) and to dismiss claims 1, 2, 3, and 5 of the Counterclaim in this action (Dkt. No. 39). The Court has thoroughly reviewed the papers, pleadings, and admissible evidence filed in support of and in opposition to the motions and **ORDERS** as follows:

**I.   PRELIMINARY INJUNCTION**

BP's motion for a preliminary injunction is **DENIED**. BP has not established a likelihood of success on the merits of its claim that it is entitled to injunctive relief because it lawfully terminated its franchise agreements with defendants.

The burden is on BP to establish a likelihood of success on the merits of its. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see also* 15 U.S.C. § 2805(b)(2), (c) [preliminary injunction should be granted if franchisee shows termination and "sufficiently serious questions going to the merits to make such questions a fair ground for litigation" and court finds hardships favor franchisee]; 15 U.S.C. § 2805 [burden on franchisor to establish termination was permitted by section 2802]. The record before the Court and the arguments of defendants raise serious factual and legal questions going to the merits of BP's claim that it lawfully terminated the franchise agreements with defendants (hereinafter, collectively, "Grand").

Grand contends that the BP's termination of the franchise agreements was not permitted under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §2801 *et seq.*, and the California Franchise Relations Act (CFRA), Cal. Bus & Prof. Code § 22020.  Grand argues that BP's imposition of the Luminate and MOJO A marketing programs, which required Grand to incur significant expenses for new lighting, fixtures, and signage, was a unilaterally imposed, material modification of the franchise agreements, made contrary to the governing California law.

The PMPA is remedial legislation which is construed liberally to effectuate its purpose of protecting franchisees. *Khorenian v. Union Oil Co.,* 761 F.2d 533, 535 (9th Circ.1985).  The PMPA prohibits termination of a franchise between a petroleum distributor and petroleum retailer, as here, unless the franchisor complies with both:(1) the notification requirements in section 2804; and (2) the termination grounds and timing requirements set forth in section 2802(b)(2).  Grounds for termination, as relevant here, include: (1) failure to comply with provisions in the franchise agreement that are "reasonable and of material significance;" and (2) failure to make "good faith efforts" to carry out other provisions of the franchise.  15 U.S.C. § 2802(b)(2)(A), (B).[1]

The CFRA requires "good cause" for termination of a franchise agreement.  Cal. Bus. & Prof. Code § 20020.  Good cause includes certain grounds for immediate termination, set forth in section 20021 (such as bankruptcy, abandonment, mutual agreement, or repeated noncompliance), and a more general provision of failure to comply substantially "with the lawful requirements imposed upon the franchisee by the franchise agreement" and an opportunity to cure.  Cal. Bus. & Prof. §§ 20020, 20021.

---

[1] Section 2802(b) also requires that the franchisor must notify the franchisee of the purported failures within a specified, limited time period, or else lose the right to base a termination on that failure. *See* 15 U.S.C. § 2802(b)(2)(A) ("if the franchisor first acquired actual or constructive knowledge of such failure-- (i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title; or (ii) not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days notification is given pursuant to section 2804(b)(1) of this title.")  15 U.S.C. § 2802(b)(2)(B) ("(i) the franchisee was apprised by the franchisor in writing of such failure and was afforded a reasonable opportunity to exert good faith efforts to carry out such provisions; and (ii) such failure thereafter continued within the period which began not more than 180 days before the date notification of termination or nonrenewal was given pursuant to section 2804 of this title.")  The Court notes that, although the parties have not addressed the timing considerations in section 2802(b)(2), the record indicates that they may undermine the merits of BP's claim as well.

Grand argues that the terminations were not permitted under either statute because BP's grounds for termination were Grand's alleged failure to comply with the requirements of the MOJO A and Luminate marketing programs. Grand contends that those programs imposed significant costs on Grand for new signage, fixtures and lighting, and were material modifications of their franchise agreements. Grand argues that these requirements were imposed unlawfully since BP made these material modifications without first providing the disclosures required by the California Franchise Investment Law (CFIL), Cal. Corp. Code § 31101, 31125.

BP does not dispute that it never made a CFIL disclosure regarding the MOJO A and Luminate programs and their costs. Instead, BP argues that the franchise agreements *already* gave BP discretion to impose such requirements at franchisees' expense, and thus could not be a *modification* of the agreement.

Grand raises a significant issue as to whether the imposition of these programs and their costs on Grand, contrary to BP's original CFIL-disclosure statement, would constitute a material modification and thus require a disclosure under the CFIL before BP could enforce compliance. The CFIL closely regulates the manner in which franchisors can impose new requirements on franchisees, requiring disclosures in all but a few situations, even with respect to petroleum distributors. *See* Cal. Corp. §§ 31101(c)(1), (2); 31104, 31125(c), (d). Section 31101(c)(1) requires that a franchisor provide to prospective franchisees a disclosure providing a number of specific pieces of information, including:

> A statement as to whether, by the terms of the franchise agreement or by other device or practice, the franchisee or subfranchisor is required to purchase from the franchisor or his or her designee services, supplies, products, fixtures, or other goods relating to the establishment or operation of the franchise business, together with a description thereof.

Cal. Corp. Code 31101(c)(1)(I). Further, section 31101(c)(2) requires disclosure of any material modifications of an existing franchise and provides that such modifications are not binding if not made in compliance with the statute. *See Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 673 F. Supp. 1493, 1502 (C.D. Cal. 1987), *aff'd in part, remanded in part,* 890 F.2d 165 (9th Cir. 1989) (sale of franchise could be rescinded by franchisee where franchisor failed to comply with the disclosure provisions in the CFIL, regardless of franchisee's default). While the CFIL does not define the term

3

"material modification," section 31125(d) indicates its bounds, excepting from liability a modification that "does not substantially and adversely impact the franchisee's rights, benefits, privileges, duties, obligations, or responsibilities under the franchise agreement."

BP sidesteps the fact that the disclosure of material terms it made to Grand expressly stated that franchisees would not be required to pay BP or its designees the costs of purchasing "services, supplies, products, fixtures or other goods" aside from gasoline. BP provided Grand a document at the initial sale of the franchise agreement entitled "BP West Coast Products LLC Information Disclosure Pursuant to California Corporations Code Section 31101," which stated in relevant part:

> **Franchisee is not required by agreement or by other devise or practices to purchase from Franchisor or a designee of Franchisor any services, supplies, products, fixtures or other goods** relating to establishment or operation of the franchise business, except for ARCO branded motor vehicle fuels and other ARCO branded petroleum products in accordance with the attached agreements. From time to time, **Franchisor may offer Franchisee other services, supplies, products, fixtures or other goods** relating to the operation of the franchise, including, but not limited, to point-of-sale equipment and advertising material **which Franchisee may, but is not required to purchase from [BP] or a designee of [BP]**.

(Lemons Reply Decl. Exh. 1, 2, emphasis supplied.)

Thus, BP's Section 31101 disclosure is at odds with the terms of the franchise agreements on which it now relies. BP's contract-based argument about the meaning of "modification" does not allow it to avoid the requirements of the CFIL with respect to "material modifications" under the meaning in that statute.

The district court decision on which BP relies heavily for its "no-modification" argument is distinguishable, since that case did not concern a situation where the statutory disclosure was at odds with the material term at issue. *Cf. ConocoPhillips Co. Serv. Station Rent Contract Litig.*, No. M:09-CV-02040 RMW, 2011 WL 1399783, at *1 (N.D. Cal. Apr. 13, 2011)

BP further contends that Grand's CFIL argument is time-barred under Cal. Corp. Code 31303.[2] First, the statute of limitations does not bar a defense of illegality. *Styne v. Stevens*, 26

---

[2] Cal. Corp. Code § 31303 provides: "No action shall be maintained to enforce any liability created under Section 31300 unless brought before the expiration of four years after the act or transaction constituting the violation, the expiration of one year after the discovery by the plaintiff of the fact constituting the violation, or 90 days after delivery to the franchisee of a written notice disclosing any violation of Section 31110 or 31200, which notice shall be approved as to form by the commissioner, whichever shall first expire."

4

Cal.4th 42, 47 (2001).  Second, there are factual issues that cannot be resolved on this motion as to whether Grand "discovered the fact constituting the violation" more than one year before it raised the defense here.

## II. MOTION TO DISMISS COUNTERCLAIM

The motion of BP to dismiss claims 1, 2, 3 and 5 of Grand's Counterclaim is **GRANTED IN PART AND DENIED IN PART**.

### A. Statute of Limitations

BP moves to dismiss claims 1, 2, and 3 on grounds of untimeliness.  The Court **DENIES** the motion.  With respect to the second claim, Grand alleges a contract-based wrongful termination claim and any triggering date would be well within the four-year limitation for such a claim.  *See JRS Prod., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 174 (2004) (franchisee may seek any common law or statutory remedy for wrongful termination of franchise in violation of CFRA).

With respect to the first and third claims, to the extent the limitations period would apply to declaratory relief claims raised in defense to a purportedly lawful franchise termination, there nevertheless appear to be factual issues as to the triggering violation.  *People v. SpeeDee Oil Change Sys., Inc.*, 95 Cal. App. 4th 709, 710 (2002), cited by BP is distinguishable, as the court decided the statute of limitations issues post-trial and based on the longer four-year limitation in section 31303.  The statute of limitations issue as to these two claims cannot be resolved on the pleadings.

Based on the foregoing, the motion to dismiss on grounds of untimeliness is **DENIED**.

### B. "Material Modification"

BP also moves to dismiss claims 1, 2, and 3 on the grounds that imposing and enforcing compliance with the MOJO A and Luminate programs does not constitute a "material modification" of the franchise agreement for purposes of the CFIL.  For the reasons state above, the Court finds the "material modification" sufficiently alleged to avoid dismissal as a matter of law.  Sections 31101(c), 31104, and 31125(c) and (d) suggest that the CFIL would require disclosure of the modification of a term which was stated in a prior disclosure and such change would substantially impact a franchisee's obligations and responsibilities under the franchise.  Thus, the motion to dismiss on these grounds is **DENIED**.

### C. Claim Preclusion

As to the Fifth Cause of Action, the motion to dismiss is **GRANTED**. The claim is precluded by the prior litigation. Grand argues in opposition that the claim does not implicate this Court's prior summary judgment ruling finding the land use restrictions not subject to challenge under California Business & Professions Code section 16600 (now on appeal) but is aimed at the harmful effects of permitted an unlawful termination of a franchise under the CFIL and PMPA while enforcing the land use restrictions. However, the plain allegations of the Counterclaim are that "use restrictions are unlawful restraints on competition," the prior litigation made a contrary determination, and this Court should stay the claim within action pending appeal of the underlying action and two authorities on which the Court relied. (Counterclaim at ¶¶ 59-61.) There could not be a clearer example of a claim being precluded by prior litigation. Whatever other procedural avenues may be open to Grand with respect to the matters on appeal and their effects on this litigation, the fifth claim for declaratory relief as alleged in the Counterclaim is not permitted. Should this Court's prior judgment be reversed, the Court can address the matter in light of the changed context.

### III. CONCLUSION

For the reasons stated herein,

(1) the motion for preliminary injunction is **DENIED;**

(2) the motion to dismiss the Counterclaim is **GRANTED only** as to the Fifth Claim for declaratory relief. As amendment of that claim would be futile, dismissal of the Fifth Claim is **WITHOUT LEAVE TO AMEND**. The motion to dismiss the counterclaim is otherwise **DENIED**.

BP shall file its answer to the Counterclaim within **21 days** of the date of this Order.

The case management conference in this matter, currently set for July 13, 2020, is **ADVANCED** to **June 1, 2020**, on the Court's 2:00 p.m. case management calendar.

**IT IS SO ORDERED**.

Dated: April 27, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**