UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BP PRODUCTS NORTH AMERICA INC., <br><br> Plaintiff, <br><br> v. <br><br> GRAND PETROLEUM, INC., et al., <br><br> Defendants, <br><br> ──────────────── <br><br> AND RELATED CROSS CLAIMS | Case No.  4:20-cv-0901-YGR <br><br> **ORDER GRANTING IN PART AND DENYING IN PART CROSS MOTIONS FOR SUMMARY JUDGMENT** <br><br> **Re: Dkt. Nos. 82, 95** |

Plaintiff BP Products North America Inc. ("BP") brings this action against corporate defendant Grand Petroleum, Inc. ("Grand") and individual defendants Amin Salkhi, Banafsheh S. Salkhi, Ali Salkhi, Souri Salkhi, and Ajang Salkhi.  BP alleges four counts: (1) breach of contract concerning violations of deed restrictions; (2) breach of contract for failure to pay amounts due; (3) breach of contract concerning personal guarantees; and (4) permanent injunctive relief. Collectively defendants assert four counter claims: (1) a declaration of Grand's rights regarding unlawful material modification of franchise under the California Franchise Investment Law, Cal. Corp. Code § 31000 *et seq*. ("CFIL"); (2) injunctive relief and damages caused by unilateral enforcement of an unlawful material modifications of Grand's mini market agreements; (3) declaratory relief that BP's termination of the franchise agreements was a wrongful termination that is unenforceable and authorizes termination of the use restrictions; and (4) injunctive relief and damages for wrongful termination in violation of the Petroleum Marketing Practices Act, 15 U.S.C.§ 2801 *et seq*. ("PMPA").

Before the Court are cross motions for summary judgment. Having carefully considered the papers and exhibits submitted, the pleadings in this action, and upon further consideration after oral argument which occurred on October 12, 2021, the Court **ORDERS** as follows and as is explained more fully below:

1. BP's motion for summary judgment on its breach of contract claims related to a failure to pay amounts due and the personal guarantees is **DENIED**. BP's motion for summary judgment on counts 1 and 2 of Grand's counter claim is **DENIED**. Grand's cross-motion for summary judgment related to these claims is **DENIED**.

2. BP's motion for summary judgment on its breach of contract claim related to the use restrictions is **GRANTED IN PART** on the issue of liability. The Court **RESERVES** on the issue of remedies. Defendants' cross-motion on these issues is **DENIED**.

I.  **BACKGROUND**

This action arises out of the termination of franchise agreements at two gas stations located in Los Altos and Oakland, California. BP and Grand entered into two essentially identical set of contracts for each of the two stations: an ampm Mini Market Agreement and a Contract Dealer Gasoline Agreement ("Gasoline Agreement"). (Dkt. Nos. 85-4, 85-5, 85-6, 85-7.)[1]

Around 2012 BP announced an opt-in "Luminate" program for franchisees at various franchise locations. While the substance of the Luminate program is disputed, it is not disputed that the Luminate program was initially a voluntary program and that the relevant agreement controlling the program is the Gasoline Agreement. At a subsequent point, BP made the program mandatory and on July 31, 2018, informed Grand that effective March 31, 2019, Grand had to comply with the Luminate program requirements. (Dkt. Nos. 91-12, 91-13.)

---

[1] Other agreements are relevant. BP's predecessor in interested conveyed the Los Altos property to defendants Amin Salkhi and Banafsheh Salkhi in August 2009 and the Oakland property was conveyed to defendants Amin Salkhi, Banafsheh Salkhi, Souri Salkhi, Ali Salkhi, Arash Salkhi, Nooshin Salkhi, and Ajang Salkhi in October 2009. (Dkt. Nos. 85-2, 85-3.) Defendant Amin Salkhi signed an Unconditional Guaranty guaranteeing certain of Grand's obligations to BP for each station. (Dkt. Nos. 86-4, 86-5.)

In or around 2016 or 2017, BP announced another program called "MOJO A." Again, the substance of the MOJO A program is disputed.[2] Initially, the MOJO A program was voluntary, and then converted to a mandatory program. On January 26, 2018, BP informed Grand that effective December 31, 2018, Grand had to comply with the MOJO A requirements. (Dkt. Nos. 91-8, 91-9.) The parties agree that the relevant agreement for the MOJO A program is the Mini Market Agreement.

By letters dated October 3, 2019, BP gave notice of the impending terminations with a period to cure and ultimately terminated Grand's Mini Market and Gasoline Agreements for both stations effective January 15, 2020. (BP SOF #11-13.) Thereafter, both stations have been branded "Grand Gasoline" and it is undisputed that Grand has operated a convenience store and gas station without BP products. (BP SOF #14-17.)

## II. LEGAL STANDARD

The parties do not dispute the summary judgment standard which is well-known and well-established, including the inferences to be given and the burdens. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987).

## III. ANALYSIS

### A. Termination Under The PMPA

This action centers on BP's termination of the franchise agreements based upon Grand's failure to comply with both the Luminate and MOJO A programs.

"The PMPA generally prohibits early termination of a franchise agreement 'except as provided in subsection(b) of 15 U.S.C. § 2802.'" *Chevron U.S.A. v. El-Khoury*, 285 F.3d 1159,

---

[2] The disputes concerning the Luminate and MOJO A program requirements were discussed on the record at the October 12, 2021 hearing. The Court noted that many documents were missing that would permit it to grant summary judgment as a matter of law, such as the "Manual."

The Court instructed the parties to submit a chart outlining specific program requirements with pincites to the record showing compliance or non-compliance. In light of this Order, the parties are not required to submit a chart. However, the Court suggests to the parties that it would be a judicious use of time to conduct the exercise as part of their trial preparation.

3

1162 (9th Cir. 2002). "The burden of proving termination is upon the franchisee. 15 U.S.C. § 2805(c). The franchisor then 'bear[s] the burden of going forward with evidence to establish as an affirmative defense that such termination . . . was permitted.'" *Little Oil Co. v. Atl. Richfield Co.*, 852 F.2d 441, 444 (9th Cir. 1988).

The parties do not dispute which provisions BP invoked to justify its termination, namely 15 U.S.C. §§ 2802(b)(2)(A) and (B). Section 2802(b)(2)(A) provides that a franchisor may terminate a franchise upon "failure by the franchisee to comply with any provision of the franchise, which provision is *both reasonable* and of *material significance* to the franchise relationship." 15 U.S.C. § 2802(b)(2)(A) (emphasis supplied).[3] Section 2802(b)(2)(B) provides that a franchisor may terminate a franchise upon a "failure by the franchisee *to exert good faith efforts to carry out the provisions of the franchise.*" 15 U.S.C. § 2802(b)(2)(B) (emphasis supplied). Because each statutory provision invoked includes the term "failure," the purported breach must not be technical or unimportant to the franchise agreement. *See Chevron U.S.A.*, 285 F.3d at 1163 (citation omitted).

To support the statutory provisions invoked, BP identified eight violations of each of the two sets of franchise agreements in its October 3, 2019 Notice of Termination and Demand For Payment, namely:

    1. Paragraph 14.1 of the Contract Dealer Gasoline Agreement
    2. Paragraph 17.1(n) of the Contract Dealer Gasoline Agreement
    3. Paragraph 17.1(r) of the Contract Dealer Gasoline Agreement
    4. Paragraph 3.01 of the ampm Mini Market Agreement
    5. Paragraph 6.02 of the ampm Mini Market Agreement
    6. Paragraph 10.02 of the ampm Mini Market Agreement
    7. Paragraph 18.03(a) and (b)(2) of the ampm Mini Market Agreement; and
    8. Paragraph 18.05 of the ampm Mini Market Agreement

(Dkt. Nos. 91-30 at 5, 91-31 at 5.) BP then broadly identifies Grand's "failure" as not "compl[ying] with the Luminate standards. . . . [and] not updat[ing] [the stations] to the Luminate

---

[3] "A [contract] provision is reasonable and material if it 'is both conscionable—that is, not absurd, ridiculous, extreme, or excessive—and of real importance or great consequence to the franchise relationship.'" *Texaco Red. & Mktg. Inc. v. Davis*, 835 F. Supp. 1223, 1228 (D. Or. 1993), *aff'd*, 45 F.3d 437 (9th Cir. 1994) (internal citation omitted).

Marks and Graphics." (*Id.*)  The Luminate program would fall within items 1 through 3.  Next, BP also advised Grand that it was not "comply[ing] with the MOJO A program requirement[s]." (*Id.*)  The MOJO A program would fall within the context of items 4 through 8.  Thus, the letters indicate that both programs served as bases for termination.

Notwithstanding the foregoing, there is no dispute that Grand *did* largely comply with the MOJO A program.  The only potential areas of non-compliance concerned the operation of fly fans at both facilities as well as cooler graphics at the Oakland station.  (Dkt. No. 106 at 55-57, 70.)  Evidence in the record shows that both facilities had fly fans as contemplated by the MOJO A program and that Grand purchased the cooler graphics from BP's preferred vendor, however, those graphics did not conform to the MOJO A program requirements.  (*Id.*; Salkhi Depo. 126:11-127:8; Lemons Depo. 122:16-124:8.)

As to the Luminate program, it is also undisputed that Grand had implemented LED lighting that complied with the Luminate program and that Grand made efforts to secure permits for the Los Altos station.  (Salkhi Depo 58:4-59:5; Lemons Depo. 150:21-151:5; Farhangdoost Depo. 106:4-107:8; BP SOF #88.)  That said they were obtained on the last day of the deadline and nothing was done with respect to the Oakland station.

Viewing the evidence in the light most favorable to the non-moving party, a genuine dispute of material fact exists as to whether Grand's alleged breaches were material and not in good faith.  First, despite its termination letters, BP now concedes a measure of compliance on the identified issues.  Second, the record provided to the Court does not demonstrate the amount of "lumination" that was installed so it is impossible to determine the level of compliance.  Third, a dispute remains whether the general guidelines that were provided by BP to Grand were reasonably sufficient to permit performance and completion of the Luminate changes at the two stations.[4]  Thus, a dispute remains as to whether that which remained, or the time to accomplish the same, was material.  Against this backdrop, many of the identified requirements do not appear to be material.  Perhaps collectively they are, but without a more complete record, the totality of

---

[4] The "Scope of Work" and "Arco Retail Image Standard" were analyzed at the hearing. (*See* Dkt. No. 91-18 at 6, 10-52.)

5

the circumstances merely creates a genuine dispute of material fact.

These are questions of fact for trial. *See Chevron U.S.A.*, 285 F.3d at 1164 (recognizing "[w]hether a violation is a 'failure' that is serious enough to warrant termination can be a question of fact for trial"); *see also Khorenian v. Union Oil Col.*, 761 F.2d 533, 536 (9th Cir. 1985) (noting "that all of the relevant factors should be explored fully at trial before any final determination is made as to whether there was a contractual violation that undermined the franchise relationship"). The Court cannot as a matter of law hold that BP's termination was lawful under the PMPA under either statutory provisions. Accordingly, BP's motion seeking summary judgment on counts two and three, as well as its request for summary judgment on Grand's first and second counterclaims, are **DENIED**. Defendants' related cross motion is **DENIED**.

### B. Material Modification Under The CFIL

Defendants' motion to find that the Luminate and MOJO A programs create a material modification of the franchise agreements and thereby violate California law is denied as premature.

Relevant to the arguments in the cross-motions, the CFIL requires that a franchisor disclose in writing sixteen categories of specific information to a prospective franchisee, referred to as an Information Statement or Information Disclosure. The section requires in pertinent part:

\*\*\*

> (G) A statement describing any payments or fees other than franchise fees that the franchisee or subfranchisor is required to pay to the franchisor, including royalties and payments or fees which the franchisor collects in whole or in part on behalf of a third party or parties.

\*\*\*

> (I) A statement as to whether, by the terms of the franchise agreement or by other device or practice, the franchisee or subfranchisor is required to purchase from the franchisor or his or her designee services, supplies, products, fixtures, or other goods relating to the establishment or operation of the franchise business, together with a description thereof.

Cal. Corp. Code § 31101(c)(1)(G), (I). "In the case of a material modification of an existing franchise, the franchisor discloses in writing to each franchisee information concerning the specific sections of the franchise agreement proposed to be modified and such additional

6

information as may be required by rule or order of the commissioner." Cal. Corp. Code § 31101(c)(2).

The Court finds that a dispute remains as to whether the programs constituted a "material modification" of the existing franchise. Material modification is not defined in the CFIL. However, as one indication of its bounds, the CFIL exempts from liability modifications that are "offered on a voluntary basis and does not *substantially and adversely impact* the franchisee's rights, benefits, privileges, duties, *obligations, or responsibilities* under the franchise agreement." Cal. Corp. Code § 31125(d) (emphasis supplied). By extension, modifications which do substantially and adversely impact the franchisee may be modifications.

Here, the "BP West Coast Products LLC Information Disclosure Pursuant to California Code Section 31101," states:

> **Franchisee is not required by agreement** or by other device or practices **to purchase from Franchisor or a designee of Franchisor any services, supplies, products, fixtures or other goods** relating to establishment or operation of the franchise business, **except for ARCO branded motor vehicle fuels and other ARCO branded petroleum products** in accordance with the attached agreements. From time to time, **Franchisor may offer Franchisee other services, supplies, products, fixtures or other goods** relating to the operation of the franchise business, including, but not limited to, point-of-sale equipment and advertising material, **which Franchisee may, but is not, required to purchase** from BPWCP or a designee of BPWCP. <u>However, Franchisee may be required to have certain equipment that meets certain specifications, including POS and method of payment equipment, telecommunications equipment, video surveillance equipment, as set forth in the attached agreements. Such equipment may only be available from the manufacturer or may be available to lease from BPWCP.</u>

(Dkt. No. 91 ¶ 9; 91-1 ¶ 9) (emphasis supplied).

The parties dispute the meaning of the disclosure. Defendants focus on the bolded language to argue that the programs are prohibited while BP focuses on the underlined language for the contrary proposition. Given the dispute, lack of legal briefing on contract interpretation, and the scant record presented, the Court cannot find as a matter of law that that the programs were either permitted by the franchise agreement or unlawful material modifications.

Accordingly, the parties' motions concerning the CFIL claims and defenses[5] are **DENIED**.

The Court is not persuaded by BP's argument that the material modification requirements of the CFIL are preempted by the PMPA. The Ninth Circuit has held that state law concerning fraud in the formation of contracts is not preempted because it does "not implicate the grounds for, procedure for or notification requirements of termination and nonrenewal under the [PMPA]." *Pride v. Exxon Corp.*, 911 F.2d 251, 257-58 (9th Cir. 1990); *see also Esso Std. Oil Co. v. Dep't of Consumer Affairs*, 793 F.2d 431 (1st Cir. 1986) (regulating the substance of the contract did not conflict with termination or nonrenewal). Here, the material modification provisions strike at what terms were bargained for and do not concern grounds or procedures for termination. BP offers no textual analysis to the contrary. The material modification provisions are not preempted.

### C.  Enforcement of the Use Restrictions

BP's motion seeking summary judgment on count one of its first amended complaint is **GRANTED IN PART**. All parties concede liability under the use restrictions. In light of the disputes of fact concerning the lawfulness of the termination, the Court **RESERVES** issues concerning equitable remedies, including the injunctive relief sought in count 4. Defendants' cross motion concerning these claims is **DENIED**.[6]

---

[5] In a footnote, BP suggests that Grand's material modification claims are time barred to the extent they are affirmative claims as opposed to defenses. This Court has already held that the statute of limitations is not a bar to an illegality defense. With respect to whether claims are time barred under California Corporate Code § 31303, the Court cannot decide the issue as a matter of law on this record. There are significant factual disputes concerning the scope of the programs at issue and whether the specifications were known.

[6] The individual defendant property owners do not have standing to challenge the lawfulness of the terminations and material modifications. These individuals are not parties to the franchise agreements and concede that there is no privity. *See, e.g.*, *Kahn v. State Oil. Co.*, 907 F. Supp. 1202, 1206 (N.D. Ill. 1995), *rev'd in part on other grounds by* 93 F.3d 1358 (7th Cir. 1996) (holding that a party lacked standing to challenge an unlawful termination where it was not a party to a contract within the scope of the PMPA); *Chinivasagam v. Equilon Enters.*, No. C 09-03136 JW, 2010 U.S. Dist. LEXIS 164803, at *11 (N.D. Cal. July 13, 2010) (recognizing that cases "show that an individual and a corporation in which they have an ownership interest are treated as separate and distinct entities under the PMPA"); Cal. Corp. Code §§ 31300, 31006 (providing remedies for a "franchisee" which is defined as "a person to whom a franchise is granted").

## IV. CONCLUSION

Having denied summary judgment on most claims, the Court will reset the trial date based on the discussion at the hearing by separate order.

This terminates Docket Nos. 82 and 95.

**IT IS SO ORDERED.**

Dated: October 14, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**